{¶ 61} I respectfully dissent from the majority's disposition of the first assignment of error.
 {¶ 62} In State v. Estepp (Nov. 26, 1997), Montgomery App. No. 16279;1997 WL 736501, we identified ten factors to consider in determining whether a defendant was in custody:
 {¶ 63} "1) What was the location where the questioning took place-i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;
 {¶ 64} "2) Was the defendant a suspect at the time the interview began (bearing in mind that Miranda warnings are not required simply because the investigation has focused);
 {¶ 65} "3) Was the defendant's freedom to leave restricted in any way; *Page 19 
 {¶ 66} "4) Was the defendant handcuffed or told he was under arrest;
 {¶ 67} "5) Were threats were [sic] made during the interrogation;
 {¶ 68} "6) Was the defendant physically intimidated during the interrogation;
 {¶ 69} "7) Did the police verbally dominate the interrogation;
 {¶ 70} "8) What was the defendant's purpose for being at the place where questioning took place? For example, the defendant might be at a hospital for treatment instead of being brought to the location for questioning;
 {¶ 71} "9) Were neutral parties present at any point during the questioning;
 {¶ 72} "10) Did police take any action to overpower, trick, or coerce the defendant into making a statement."
 {¶ 73} I think factors (1) (2) (8) and (9) support an "in custody" determination. The other six factors do not.
 {¶ 74} Detective Swafford told R.'s mother, apparently in R.'s presence, that R. was not under arrest, that R. "was going to be free at any time he wants," and that he would bring R. home from the police station. At no time did Detective Swafford say anything to the contrary to R. At no time was R. patted down or handcuffed or threatened. While Detective Swafford was much larger than R. and wore a badge and sidearm, there is no evidence that R. was physically intimidated (or intimidated at all, for that matter). Nor is there any evidence that Detective Swafford verbally dominated the interrogation or took any action to overpower, trick, or coerce R. into making a statement. Indeed, R. appears not to have kept his behavior secret, having — previous to his encounter with Detective Swafford — told his mother he had intercourse with the victim, and having responded, when Detective Swafford asked him at his home "do *Page 20 
you know why I'm here?", that "Ben and Zack did it, too."
 {¶ 75} As noted by the majority, Detective Swafford did honor his commitment to drive R. home when R. said he wanted to leave, and, in any event, R. could have walked the mile distance to his home had he chosen to leave, the interview having taken place around noon on August 9, 2004. It was not unreasonable for Detective Swafford not to offer R. food or drink or a break when portal-to-portal time was no more than an hour, and R. made no requests for food, drink, or a break.
 {¶ 76} I realize that the Estepp factors supporting an "in custody" determination need not outnumber or equal those that do not before a determination can be made that a defendant was in custody. Nevertheless, in my judgment, the record before us supports the trial court's determination that R. was not in custody when he spoke to Detective Swafford. I would overrule the first assignment.
 {¶ 77} I would also overrule the fourth assignment on the merits and affirm the judgment. *Page 1